[Civ. No. 15787. Fourth Dist., Div. Two. June 6, 1977.]

CALIFORNIA TEACHERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE CUCAMONGA ELEMENTARY
SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Galiano, Hansen & Wheatley and Horace Wheatley for Plaintiffs and Appellants.

M. Crane Kitchel, County Counsel, and Craig S. Jordan, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**GARDNER, P. J.—**

### INTRODUCTION

In this case we hold that under Education Code section 13468.5[1] school districts may adopt rules and regulations prescribing the types of situations in which a personal necessity leave is justified and may review a certificated employee's determination of personal necessity. We further

---

[1]The entire Education Code has been repealed and reenacted with new section numbers effective April 30, 1977. We use the old numbers and refer to them in the present tense.

hold that a school district's determination that a religious observance is not a personal necessity is not an abuse of discretion. Finally, we decline the requests of the parties that our ruling be bottomed on constitutional grounds.

Plaintiff Waldman, a teacher in defendant school district, is a member of the Jewish faith. On September 27, 1973, Mrs. Waldman absented herself from her teaching duties to celebrate Rosh Hashanah, the Jewish New Year. The school district declined to accept a religious observance as an allowable reason for personal necessity leave and docked her one day's pay. Thereupon, plaintiff Waldman and the employee organization to which she belongs brought suit against the district for declaratory relief and for damages. The trial court upheld the school district.

Section 13468.5 pertains to the use by a certificated employee of sick leave for purposes other than injury or illness. Section 13468 provides that a full time employee is entitled to 10 days off with pay for injury or illness. However, under section 13468.5, an employee is entitled to use not more than six of those days which he would ordinarily use for injury or illness for another purpose—personal necessity. Thus, without being injured or ill, an employee may use up to six days of pay if his or her situation comes within the concept of personal necessity.

## I.

### THE EVOLUTION OF EDUCATION CODE SECTION 13468.5

Currently, Education Code section 13468.5, as amended in 1971, reads as follows:

"Any days of leave of absence for illness or injury allowed pursuant to Section 13468 may be used by the employee, at his election, in cases of personal necessity. The governing board of each school district and each office of county superintendent of schools shall adopt rules and regulations requiring and prescribing the manner of proof of personal necessity for purposes of this section.

"The employee shall not be required to secure advance permission for leave taken for any of the following reasons:

"(a) Death or serious illness of a member of his immediate family.

"(b) Accident, involving his person or property, or the person or property of a member of his immediate family.

"No such accumulated leave in excess of six (6) days may be used in any school year for the purposes enumerated in this section."

As originally enacted in 1965 (Stats. 1965, ch. 2067), the section used the phrase "personal emergency" instead of "personal necessity." It also contained a subdivision (c) allowing appearance in court as a personal emergency for which advance permission need not be obtained.

In 1968, the section was amended to substitute the phrase "personal necessity" for "personal emergency." (Stats. 1968, ch. 1340.) It also added a subdivision (d) to those situations in which there was to be no need for advance permission. That subdivision read "such other reason which may be prescribed by the governing board."

As it pertains to the problem of a religious observance there existed before 1968 no particular problem. By common usage and Websterian definition "emergency" means an unforeseen, sudden or unexpected occurrence demanding immediate and prompt action. Certainly, under the pre-1968 law, a religious observance could hardly be called an emergency.

■ However, with the substitution of the word "necessity" for "emergency" it was a whole new ball game. Necessity and emergency are two entirely different concepts. By using a most basic example, breathing is a necessity. If one ceases to breathe, it is an emergency. Necessity connotes that which is indispensable, necessary, unavoidable because compelled, a requisite, required by social or legal compulsion or imperative need. Perhaps a good working definition is something that cannot be done without. Again, to reduce the matter to basics, breathing is a necessity, whistling is not. Dictionaries seem to have difficulty articulating the concept. (See Webster's New Collegiate Dict. (2d ed.); Webster's Unabridged Dict. (2d ed. 1976); 3 Webster's New Internat. Dict. (2d ed. 1958); Webster's Third New Internat. Dict., (Unabridged 1964).) However, we must not become involved in the more esoteric possibilities. We must limit ourselves to common usage and understanding.

When one adds the word "personal" the situation becomes more complex. Does that which is not a necessity in the abstract become a

necessity when applied to the individual? Plaintiffs apparently feel that it is a matter left to the individual. They allege that "the generally accepted Websterian definition of 'personal necessity' is an urgent need or desire relating to or affecting a person privately or individually." Apparently, we are not using the same Webster, for we find nothing comparable to the above in the Websters which we have examined. Carried to its logical conclusion, a personal necessity under that definition could be defined as anything a person wants as long as the desire is urgent—a properly mixed and chilled martini, a day at the races, a heaven-sent opportunity to throttle a nagging spouse. We cannot accept quite such a broad approach.

Tracing the legislative history of those situations in which advance permission is not required is not particularly helpful.

In 1965, the phrase "personal emergency" was used and the section was limited to cases of personal emergency which were three in number—death of a member of the family, accident, or appearance in court. The latter could hardly be called an emergency under normal circumstances. A necessity, yes, an emergency, no.

Then in 1968, the language was changed to "personal necessity." The same three criteria were retained plus "such other reasons which may be prescribed by the governing board." Under the 1968 version, at least, we had a clear cut determination as to just who determined what a personal necessity was. Under that version, it was clear that the board made the determination.

Then, as finally amended in 1971 although using the phrase "personal necessity," we are left with two clearly defined emergency situations— death in the family and accident. Courtroom appearances have been deleted as was the statement "such other reasons which may be prescribed by the governing board."

Nevertheless, the section with which we now deal has provided at all times that the employee need not secure advance permission in the death in the family or accident situation. At all times it has contained the same language, i.e., that the board shall adopt rules and regulations requiring and prescribing the manner of proof of personal necessity. When we realize that that same language was used when the section referred to personal emergency we get a glimmering of what may have been in the legislative mind. An emergency by definition is something unforeseen or

sudden. Thus, securing advance permission to respond to an emergency would present something of a problem because of the element of time. Getting advance permission to respond to an emergency not involving death, accident or court appearance would often be difficult, if not impossible. Thus, the section was amended and the emergency aspect deleted. The word necessity was substituted. Unlike an emergency, a necessity may be something that one can anticipate and prepare for. Thus, we go back to the example of the court appearance. It is necessary that one appear in court. However, this is seldom an emergency situation. So, under the present law, one could anticipate a court appearance, make the necessary showing, and make the necessary appearance. Thus, it would appear beyond question that it was the intent of the Legislature to broaden the bases for paid leave from situations in which the time element is all important, i.e., an emergency to other situations in which the emergency aspect is lacking.

Having laboriously determined that a personal necessity is not identical with a personal emergency and having decided that the concept of personal necessity encompasses a wider vista than does a personal emergency, we now proceed to the problem of just who determines what is a personal necessity. As we have indicated, plaintiffs seem to feel that this is a matter purely left to the individual to decide. As we have indicated, we cannot accept quite such a broad concept. It flies in the face of the statutory language to conclude that the Legislature meant an employee could say to the board, "I have a personal necessity. It is essential to my well-being that I go to the World Series." Certainly, the Legislature meant no such broad granting of authority to the employee or such a severe impairment on the power of the employer.

## II.

### The Governing Board of a School District Has the Power to Determine What Is and What Is Not Personal Necessity Pursuant to Education Code Section 13468.5

■ The Attorney General, in a well-reasoned opinion (56 Ops.Cal. Atty.Gen. 473 (1973)) concluded that:

"1. Certificated personnel must make the determination as to what constitutes 'personal necessity' in the first instance but the school district has the power and duty to review the determination of the employee.

"2. Certificated personnel must obtain advance permission prior to taking 'personal necessity' leave except in the situations specifically enumerated in section 13468.5.

"3. School districts may adopt rules and regulations prescribing not only the manner of proof for requests for personal necessity leave but also specifying the types of situations which they feel would justify the granting of personal necessity leave."

The analysis of the Attorney General in this respect we consider to be excellent and we set it forth, in part, herein as the reasoning of this court.

"While the Legislature has changed the specific wording of section 13468.5 from 'personal emergency' to 'personal necessity' . . . we do not believe that the Legislature intended thereby to give certificated employees a completely free hand to decide when they would absent themselves from their school duties. By providing that such leave could be used 'at his election' we think the Legislature simply meant to say the employee is totally free to use or not use sick leave for personal necessity reasons. If the Legislature had intended a broader grant of power to employees, we believe that it would have used words more appropriate to that purpose. For example, it could have provided for leave to suit the personal convenience of the employee rather than limiting such leave to cases of personal necessity. . . Furthermore, this legislation . . . must be interpreted in light of the indicated intent of the Legislature, as interpreted by the courts in cases such as *Nelson* v. *Dean,* 27 Cal. 2d 873 (1946), and *Hatch* v. *Ward,* 27 Cal. 2d 883 (1946), which indicate that the courts do not feel that the Legislature intended to grant unrestricted sick leave for the convenience of employees but rather to grant such leave primarily for the purpose of promoting the public interest. We conclude therefore that certificated personnel have not been granted complete freedom to use 'personal necessity' leave whenever they wish and for whatever purpose they deem appropriate, all without review by the school district. Rather we believe the school district has the power, and indeed even the duty, to review requests for personal necessity leave and to prevent abuses of such leave by certificated personnel.

"Turning to . . . the problem of advance permission, we think it is clear that the employee would be the person to make the determination

as to *what* constitutes personal necessity in the first instance. Furthermore by submitting an application together with such support as may be required by the school district or deemed appropriate by the employee, a record would be made which would permit review by appropriate administrative agencies or, if necessary, by the courts. In this regard it should be noted, however, that the section specifically provides that advance permission will not be required in certain situations. This of course does not mean that permission will not be required subsequently even in the enumerated situations. However, it certainly does clearly state advance permission is not required in the specified situations. By limiting the number of such situations however the section also implies that the school district has the authority to require the employee to seek advance permission for such leave in any other situation. Of course where advance permission is not required the determination would be made by the employee in the first instance whereas in those cases where advance permission is required, the school district would make the first decision based on all the facts provided by the employee and otherwise obtained by the school district.

"The [next] question relates to the authority of the school district to adopt rules and regulations. With respect to this question, the operative sentence of section 13468.5 provides:

" 'The governing board of each school district and each office of county superintendent of schools shall adopt rules and regulations requiring and prescribing the manner of proof of personal necessity for purposes of this section.' The question is whether the above language narrowly limits the authority of the governing board solely to the 'manner of proof.' We do not believe that the language quoted above so limits the power of the school board. Rather it simply mandates school districts to adopt certain types of regulations relating to the manner of proof. In fact it seems logical to interpret the section as indicating legislative intent that the school district determine what proof is necessary to establish a case of personal necessity within the meaning of the section. Thus we do not believe the section limits school districts to adopting only rules and regulations prescribing the manner or form of proof. The intent seems to have been to cover a specific area rather than to remove or restrict general rule-making power. Moreover, it would seem that the adoption of regulations spelling out the types of situations where the school district would grant personal necessity leave would be to the benefit of all concerned since it would provide some advance guidance to employees as to the types of situations where personal

necessity sick leave would be granted or denied without question. Furthermore, it would probably also provide a basis for any concerned employee to commence an action challenging the interpretation of the school district. We conclude, accordingly, that school districts retain broad rather than narrow rule-making powers in the area of personal necessity leave." (At pp. 474-476.)

As indicated, we agree with the above analysis and hold that the governing board of the school does have the power to determine just what is and what is not a personal necessity under Education Code section 13468.5.

In the exercise of that discretion the district established a policy by which seven situations were defined as those in which a certificated employee could, at his election, use not more than six days of accumulated sick leave benefits under the label of personal necessity. These are: (1) Death of a member of the immediate family; (2) accident; (3) appearance in court; (4) serious or critical illness of a member of the immediate family; (5) medical and dental conditions of the employee; (6) financial condition of employee that would result in unconscionable financial loss; and (7) mental health condition of the employee. Attendance at a religious observance was not listed.

We now proceed to a determination of whether the board abused its discretion in denying Mrs. Waldman her paid leave of absence for a religious observance.

### III.

#### THE GOVERNING BOARD OF THE SCHOOL DISTRICT DID NOT ABUSE ITS DISCRETION WHEN IT EXCLUDED ATTENDANCE AT RELIGIOUS OBSERVANCES FROM PERSONAL NECESSITY.

Religion in the abstract is not a necessity. Certain percentages of our population are either atheists or agnostics or fall into a group with vaguely Christian backgrounds by reason of birth and ancestry but with no particular religious or spiritual beliefs. This group belongs to no religious faith or creed and is simply indifferent to religious or spiritual matters. Yet many persons who fall into these three groups—atheists, agnostics and indifferents—lead happy, well-adjusted and productive

lives. They are not antireligious, they are simply nonreligious, a status to which they are entitled under our Constitution. Thus, it cannot be said that religion in the abstract is a necessity.

But, say plaintiffs, religion may be a personal necessity to an individual. This may be true in philosophical or spiritual abstraction, but certain pragmatic considerations enter into the subject. Because of an accident of history, ours is a culture based upon Christian practices. Thus in business, industry and government we have a five-day workweek. This, in general, allows a Christian to attend his religious observances on one of the remaining two days of the week. However, some categories of activity do not share that privilege. For example, police officers, firemen, lifeguards, truck and bus drivers, airline personnel all work on a seven-day schedule. If any one of them wants Sunday off for a Christian religious observance, he must make some accommodation to that effect with his employer. He has no constitutional right to a paid leave of absence on Sunday to attend church. If his religion or his religious beliefs make appearance at church on Sunday a personal necessity, he simply has to pursue some other occupation than those which entail working on Sunday.

We follow that concept into Mrs. Waldman's situation. She happens to be of the Jewish faith. It happens that attendance at Rosh Hashanah is to her a personal necessity. However, ours is a highly pluralistic society. Numbered among our citizens are those who follow the tenets of Buddhism, Confucianism, Mohammedanism, Taoism, Zoroastrianism, Jainism, Sikhism, Brahminism, Shintoism, Vedantism and many currently popular sects which seem to spring from nonChristian religious philosophies. For all we know there may be a few followers of the legendary Prester John floating around. The point is that with this welter of religious beliefs, each must, as must those following the predominant Christian culture, adjust himself or herself to the realities of our prevailing social and economic life. Thus, a follower of X religion cannot ask that the General Motors assembly line stop that line each Wednesday to permit him to practice his religion. While our laws and culture demand freedom of religion, we also demand that those entertaining religious beliefs adjust the observance of those beliefs to the prevailing social and economic patterns by which our society operates. The member of no religion has a right to stop the whole operation of business or government for the purpose of attending a religious observance. Thus, the issue is not whether Mrs. Waldman could attend a religious observance. She could and did. The issue is whether she was

entitled to use a paid leave of absence for that purpose. Thus, it is clear that it was not an abuse of discretion to deny her that privilege. It is true that the district should afford "reasonable accommodation" to a person's religious practices. (*Cummins* v. *Parker Seal Company,* 516 F.2d 544.) This it has done. Mrs. Waldman was in no way hampered from or disciplined for attending the religious observance. The only thing the school district said was that it was not going to pay her a day's salary when she did so. In making that determination, there was no abuse of discretion on the part of the board. For us to find there was such an abuse of discretion, we would have to find as a matter of law that attendance at a religious observance is a personal necessity. This we decline to do. Were we to do so, the results would be chaotic. Every school teacher belonging to every sect, whether a legitimate religious group or not, would forthwith be entitled to six days of paid holidays. It appears reasonable, therefore, to limit the definition of personal necessity in a way which allows for effective supervision.

## IV.

### THE CONSTITUTIONAL ISSUE

█ The parties invite us to make a further determination as to whether it would have been constitutional for the board to give Mrs. Waldman such a leave. In analyzing this problem, they cite the establishment clauses of the federal and state Constitutions, plus article XVI, section 5 of the California Constitution which provides in substance that no school district shall pay any money for any religious or sectarian purposes.

We decline to become involved in the constitutional debate since to do so would be to render a purely advisory opinion.

Generally, courts should not pass on constitutional questions when a judgment can be upheld on alternative, nonconstitutional grounds. Courts should follow a policy of judicial self-restraint and avoid unnecessary determination of constitutional issues.

In this case the district adopted standards for personal necessity leave which omitted attendance at a religious observance. As we have indicated, we hold that the board had the power and the duty to establish such standards and further that there was no abuse of discretion in determining that a religious observance was not a personal necessity.

That disposes of all of the issues properly presented in this case.

It is true that the county counsel advised the board that to grant such a leave would be in contravention of the above constitutional provisions. However, since we have determined that the district in its sound discretion had the right to deny Mrs. Waldman her day of personal necessity leave, were we to take the next step and second-guess the county counsel, we would, as indicated, clearly be rendering an advisory opinion and making an unnecessary constitutional determination. The district had the right to deny Mrs. Waldman's request. It did. Why it did is immaterial—so long as there was no abuse of discretion.

Under no circumstances has there been a violation of any of the above constitutional prohibitions on the part of the school district since it did not expend money in such a way as to advance religion. To the contrary, the district declined to pay Mrs. Waldman for her day off for a religious observance. Mrs. Waldman certainly has no constitutional right to a paid leave of absence to attend a religious observance. At oral argument, we were advised that certain districts do allow a paid leave of absence for religious observance such as Rosh Hashanah. This is a matter of the exercise of discretion by the individual school district. Should such a district grant a paid leave of absence for a religious observance and should some irate taxpayer bring suit, then the constitutional issue will be squarely presented. It is not presented in this case.

Judgment affirmed.

McDaniel, J., and Morris, J., concurred.