Filed 4/24/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063066 |
| v. | (Super. Ct. No. 01WF1559) |
| PHUOC THIEN LUU, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Robert A. Knox, Judge. Reversed and remanded with directions.

Elisabeth R. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Courts generally follow the plain language of a statute unless that interpretation would be inconsistent with legislative intent or "'would lead to absurd results.'" (*Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 513 ["'we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results'"].)

In 2001, Phuoc Thien Luu was 17 years old when he participated in an attempted home invasion robbery with three other men. One of the men shot the homeowner. The four would-be robbers then immediately fled. The shooter was later killed by police when they tried to arrest him.

The homeowner fortunately survived. Luu and another accomplice, Dung Van Nguyen, were charged with attempted murder (under the now defunct natural and probable consequences doctrine), related crimes, and enhancements. The remaining accomplice pleaded guilty to attempted murder with a reduced sentence and testified for the People.

A jury found Nguyen guilty of attempted murder, the related crimes, and enhancements. The trial court sentenced Nguyen to 102 years to life, plus 10 years. A separate jury found Luu not guilty of attempted murder, but guilty of the lesser included offense of attempted voluntary manslaughter, as well as the related crimes and enhancements. The court sentenced Luu to 25 years to life, plus a year and six months.

In 2022, Nguyen and Luu each filed Penal Code section 1172.6 petitions (formerly 1170.95).[1] "Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021–2022) renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) For clarity, we will mostly refer only to section 1172.6 in this opinion. All subsequent undesignated statutory references are to the Penal Code.

2

the degree of culpability now required for a murder, attempted murder, or manslaughter conviction." (*People v. Strong* (2022) 13 Cal.5th 698, 720.)

As to Nguyen, the People conceded he was entitled to relief, and he was released from prison. As to Luu, the People conceded that they likely could not prove him guilty under current laws; however, because the crime of attempted manslaughter is not specifically mentioned in section 1172.6, the People argued Luu was statutorily ineligible for relief.

The trial court initially issued an order to show cause (OSC), but later held that Luu was statutorily ineligible for relief.

It is undisputed that had the victim died, Luu would be eligible for relief under section 1172.6. Further, had the jury found Luu guilty of attempted murder (rather than the lesser included crime of attempted manslaughter), Luu would also be statutorily eligible for relief under the statute. We find this result to be unintended, unjust, and absurd.

Thus, we hold that a petitioner is eligible for relief under section 1172.6 when that person was charged with attempted murder under the natural and probable consequences doctrine and he or she was convicted of the lesser included offense of attempted manslaughter.

A contrary rule would frustrate the intent of the Legislature, and—as demonstrated by the facts in this case—would manifestly lead to unjust and "'absurd results.'" (See *People v. McKenzie* (2020) 9 Cal.5th 40, 45 ["Such a rule 'would clearly lead to absurd results'"].)

We reverse the order of the trial court, which denied Luu's section 1772.6 petition. On remand, the court is directed to reissue an OSC, and set an evidentiary hearing. If the People cannot prove that Luu is guilty of attempted manslaughter under current laws, then the court shall resentence Luu with credit for time served (about 24 years).

I.

FACTS AND PROCEDURAL BACKGROUND

The following statement of facts is taken from our 2005 unpublished opinion in the underlying appeal:

"Loc [N. (Loc)] lived at a residence on Stern Street in Garden Grove on June 7, 2001. With [Loc] in the home at the time were his wife and four grandchildren who were all under the age of five.

"Working at the house that day was a man named Pedro [J. (Pedro)] who was measuring for the installation of an iron gate because of a previous robbery. [Loc] had just finished showing [Pedro] the sliding door area and turned to walk back into the house when he saw a shadow of someone running by the house. He looked and saw a Vietnamese man holding a silver colored revolver who told him in Vietnamese to open the door.

"[Loc] shut the door but was unable to lock it. The man, later identified as Nam Nguyen (Nam), held the gun in one hand and pushed open the door with the other. The two struggled. [Loc] said 'he beat me up.' [Loc] pushed the gunman outside where [Loc] struck an elevated brick planter area and fell.

"Suddenly [Loc] felt something strike his head from behind and he, too, fell down. [Loc] realized there was a second man and he grabbed one of the second man's hands. The second man pulled [Loc] up while the first one pointed the gun at him. [Loc] tried to grab the second man when the first one [(Nam)] fired a shot at him and he felt numb. [Loc] testified, 'And then I didn't feel anything else, and those two guys ran away.' [Loc] lost consciousness. [¶] When [Loc] recovered consciousness, he saw he was in a pool of blood. He crawled into the house and called 911.

"As [Pedro] started walking down a pathway to go toward the

4

house, he saw three people hiding outside behind the house. The three men grabbed him and hit him in the chest with a gun. They were slim, approximately 20 years old, and two held pistols. In English, one of the two who held a pistol told him to sit down, lower his head and be quiet. Two men stayed with [Pedro] in the back of the house. The third went toward the kitchen area with a gun. One of the remaining men pointed a gun at [Pedro's] head while the other [(Luu)] stood looking around."

"[Pedro] could hear yelling from inside the house. He testified, 'I heard the lady screaming and the children and also the gentleman was arguing; then he was yelling.' Then he heard a shot. [Pedro] saw two men jump the back wall. He went further into the yard and hid. Another man came running and he also jumped the wall." (*People v. Luu* (May 25, 2005, G032664) [nonpub. opn.].)

"[A] Garden Grove Police Detective . . . was conducting surveillance of [Nam's] apartment on July 6, 2001, when he and other detectives stopped two cars leaving the apartment. During an exchange of gunfire, Nam was shot and killed." (*People v. Luu, supra,* G032664.)


*Relevant Court Proceedings*

The People filed an amended information charging Luu and Nguyen with attempted murder, two counts of attempted robbery in concert, residential burglary, and street terrorism. The People also charged Nguyen with unlawful firearm possession. The information further alleged gang enhancements, and related firearm enhancements (Luu with vicarious use of a firearm, and Nguyen with personal use of a firearm).

In April 2003, following the grant of a severance motion, a jury trial was held as to Luu. The court instructed the jury that attempted

5

voluntary manslaughter was a lesser included offense of attempted murder. The court further instructed the jury that to find Luu guilty of either attempted murder or attempted voluntary manslaughter, the jury must find that the crime "was a natural and probable consequence of the commission of the crimes of attempted robbery in concert or the lesser included offense of attempted robbery or burglary or . . . attempted burglary."

The jury found Luu not guilty of attempted murder, but guilty of attempted voluntary manslaughter as a lesser included offense. The jury found Luu guilty of the remaining counts and found true the sentencing enhancements. The trial court sentenced Luu to a term of 25 years to life, plus one year and six months.

In April 2022, Luu filed a section 1172.6 petition seeking to vacate his attempted manslaughter conviction and to be resentenced. The People filed a response arguing the trial court should "deny petition because the petitioner's conviction for attempted voluntary manslaughter is not enumerated in Section [1172.6]."

In January 2023, the trial court held a prima facie hearing. After listening to arguments, the court said, "I am mindful of the intent of the statute, which is to provide some relief for people who were sentenced to extensive periods of time in state prison because of a natural and probable consequences theory for their conviction, and Mr. Luu did receive a substantial sentence after he was convicted." The court continued: "And in order to liberally interpret the statute, I am going to grant the prima facie showing based on his petition, so that a full hearing could be heard as to the underlying circumstances of his conviction." The court issued an OSC, ordered the People to produce the 2003 trial transcripts, and set the matter for an evidentiary hearing.

6

In July 2023, the trial court held an evidentiary hearing. The prosecutor noted that Luu's codefendant Nguyen had been convicted of the greater crime of attempted murder and had already been granted relief under section 1172.6, and therefore "equity would seem to suggest that there should be a remedy here."[2] However, the prosecutor argued: "Mr. Luu was convicted of attempted voluntary manslaughter, and a plain reading of the statute for Penal Code 1172.6 does not offer relief to someone who was convicted of attempted voluntary manslaughter."

The court asked, "[G]iven the People's concession with respect to . . . Nguyen, is it the People's position that Mr. Luu, given the facts . . . would otherwise be eligible for resentencing if he had been convicted of attempted murder instead of attempted voluntary manslaughter?" The prosecutor said "that the likely scenario is that the People would be unable to meet their burden to prove beyond a reasonable doubt that Mr. Luu would be guilty of attempted murder under current law."

In August 2023, the trial court ruled: "The Court is aware that by denying the petition, Mr. Luu's sentence is disproportionate to sentences imposed on his codefendants, and is, therefore, inconsistent with the Court's understanding of the legislative intent of the statute. However, the plain wording of Penal Code 1172.6 is clear. The Court presumes that the Legislature's omission of attempted manslaughter was deliberate, and despite the apparent inequities of this outcome, the Court finds that Mr. Luu is not eligible for relief, and his petition is denied."

---

[2] The fourth coparticipant pleaded guilty to attempted murder, got a reduced sentence, and testified in Luu's trial. At the time of Luu's evidentiary hearing, that coparticipant had apparently not applied for relief under section 1172.6.

II.

DISCUSSION

Luu claims the Legislature intended that defendants convicted of attempted manslaughter under the natural and probable consequences doctrine are eligible for relief under section 1172.6, and a contrary interpretation has led to an unjust and absurd result.[3] We agree.

Issues of statutory interpretation are pure questions of law that we review de novo. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1023.)

We shall: A) review the relevant principles of statutory interpretation; B) summarize the purposes of section 1172.6; and C) analyze section 1172.6 as applied to the rules of statutory interpretation.

*A. The Principles of Statutory Interpretation*

The fundamental goal of statutory interpretation is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) "'''We begin by examining the statute's words, giving them a plain and commonsense meaning.'''" (*Ibid.*)

"We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .'" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "That is, we construe the words in

_____

[3] In the alternative, Luu claims that he is entitled to relief under the equal protection clause. Given our disposition, we need not address this issue. (See *California Teachers Assn. v. Board of Trustees* (1977) 70 Cal.App.3d 431, 442 ["Generally, courts should not pass on constitutional questions when a judgment can be upheld on alternative, nonconstitutional grounds. Courts should follow a policy of judicial self-restraint and avoid unnecessary determination of constitutional issues"].)

question "'in context, keeping in mind the nature and obvious purpose of the statute . . . .'"'" (*Ibid.*) "We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" (*Ibid.*)

"We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended." (*People v. Birkett* (1999) 21 Cal.4th 226, 231; *People v. Pieters* (1991) 52 Cal.3d 894, 898 [the "'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend'"].)

"'"If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's . . . legislative history, and public policy.'"'" (*People v. Reynoza* (2024) 15 Cal.5th 982, 989–990.) "'""Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'"'" (*Ibid.*)

"'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.' [Citation.] We reject any interpretation that would lead to absurd consequences." (*People v. O'Bannon* (2024) 105 Cal.App.5th 974, 980.)

*B. Senate Bill No. 1437 (SB 1437) and Senate Bill No. 775 (SB 775)*

On September 30, 2018, the Governor signed SB 1437 into law, which became effective on January 1, 2019. The Legislature recognized: "It is a bedrock principle of the law and of equity that a person should be punished

9

for his or her actions according to his or her own level of individual culpability." (Stats. 2018, ch. 1015, § 1, subd. (d).)

SB 1437 amended Penal Code sections 188 and 189 to change the definitions of malice and murder. The Legislature determined that a person's liability for murder "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

The Legislature's stated purpose in passing SB 1437 was "to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." [4] (Stats. 2018, ch. 1015, § 1, subd. (f).)

The crime of murder in California "is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) As amended by SB 1437, the law now provides: "For purposes of Section 187, malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] (3) Except as stated in [the narrower felony-murder rule], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on*

---

[4] As far back as 1983, the California Supreme Court had characterized the former felony-murder rule as ""barbaric."" (*People v. Dillon* (1983) 34 Cal.3d 441, 462–463.)

10

*his or her participation in a crime.*" (§ 188, subd. (a), italics added.)

SB 1437 also created section 1170.95, which was later renumbered to 1172.6, which outlined a comprehensive process for certain defendants convicted of felony murder, or murder under a natural and probable consequences doctrine, to petition to have their murder convictions vacated and to be resentenced on the remaining charges.

Initially, the Legislature did not specify whether former section 1170.95 was intended to apply to defendants convicted of attempted murder or manslaughter under the natural and probable consequences doctrine or under the former felony-murder rule. But by interpreting its plain meaning, and by strictly adhering to the literal language of former section 1170.95, appellate courts routinely held that such defendants were ineligible for relief. (See *People v. Sanchez* (2020) 48 Cal.App.5th 914, 916 [the statute "does not apply to defendants convicted of voluntary manslaughter"]; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 ["The plain language of the statute is explicit; its scope is limited to murder convictions"]; *People v. Munoz* (2019) 39 Cal.App.5th 738, 757, review granted Nov. 26, 2019, S258234 ["all indications are that the exclusion of attempted murder was intentional"].)[5]

The Legislature later expressly disagreed with the various appellate courts' interpretations of former section 1170.95, and abrogated the above holdings by passing SB 775 (2021-2022 Reg. Sess.).

"SB 1437 . . . has left California in a peculiar situation. While it *may seem obvious* that persons who have pled or been convicted of

---

[5] As noted, the Supreme Court granted review in *People v. Munoz, supra,* 39 Cal.App.5th 738. The Court later transferred the case back to the appellate court "with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551)."

11

manslaughter or attempted murder at trial under a felony murder or natural and probable consequences theory should be entitled to the same relief as persons convicted of more serious offenses of first and second degree murder *some courts have ruled that they are not*. This bill [(SB 775)] seeks to clarify *that obvious inequity* in the law. If this bill passes, people who are serving a sentence of manslaughter or attempted murder that were prosecuted under a felony murder theory or a natural and probable consequences theory will be able to have their sentences recalled under the same standards as people who have been convicted of first and second-degree murder." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 775 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 7, italics added.)

According to the author of SB 775: "Although SB 1437 changed California's long-held and unjust homicide laws that was overly punitive to those who did not kill or intend to kill, some appellate courts have reasoned, *incorrectly*, that SB 1437 applies only to murder and not to attempted murder. This has led to an *absurd and unfair situation* where people are eligible for resentencing if the victim died, but are ineligible if the victim did not die. Furthermore, although SB 1437 allowed a pathway for people who took [plea] deals to lesser charges such as manslaughter to apply for resentencing, the bill did not explicitly include these people for resentencing. As a result, this has led to a situation where the least culpable people are still serving decades in prison even though they should be eligible for relief.

"SB 775 clarifies existing law to include voluntary manslaughter and attempted murder convictions as eligible for relief under SB 1437. This simple reform would assist hundreds of incarcerated people who have been deemed by the appellate courts to be excluded by *the technical language* of SB 1437, and the thousands of similar people who did not file petitions yet

12

because of the court rulings." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 775, *supra*, at p. 3, italics added.)

A Senate Appropriations Committee report stated: "This bill would allow a person . . . who was convicted of manslaughter when the prosecution was allowed to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine to apply to have their sentence vacated and be resentenced if, among other things, the complaint, information, or indictment was filed to allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or attempted murder under the natural and probable consequences doctrine." (Sen. Com. on Appropriations, Sen. Bill No. 775 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 3.)

***"The purpose of this legislation is to 1) clarify that persons who were convicted of <u>attempted murder or manslaughter</u> under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories . . . ."*** (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 775, *supra*, at p. 1, underline added.)

The statute now provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine, or manslaughter* may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1172.6, subd. (a), italics added.) The statute does not explicitly mention the crime of attempted manslaughter.

13

*C. Application and Analysis*

"The rule of strict interpretation of penal statutes does not apply in California." (*People v. Squier* (1993) 15 Cal.App.4th 235, 241.) "The rule . . . that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4.)

Generally, the Legislature intends remedial legislation to apply to attempted crimes, even when the Legislature only mentions the completed crimes within the statute. (See, e.g., *People v. King* (1993) 5 Cal.4th 59, 69 (*King*) [Legislature did not intend to punish *attempted* juvenile murderers more severely than successful ones]; *People v. Barrajas* (1998) 62 Cal.App.4th 926, 930 (*Barrajas*) [statutory diversion is available for *attempted* drug crimes].)

In *King*, a 16-year-old defendant committed an armed robbery of a drug store, killing one employee and injuring another. (*King, supra*, 5 Cal.4th at p. 63.) Defendant was tried as an adult and pleaded guilty to murder, attempted murder, related crimes, and enhancements. But because defendant's offenses included a conviction for *attempted murder*, the trial court found defendant ineligible for a commitment to the California Youth Authority (CYA) and imposed a prison sentence.[6] (*Id*. at p. 64.)

The Supreme Court in *King* disagreed with the trial court's ruling, finding the Legislature "did not intend a lesser included offense to have potentially harsher penal consequences than the greater offense. Defendant should not be penalized because one of his victims survived; he should not be made to regret not applying the coup de grâce to that victim."

_____

[6] The CYA is now known as the Division of Juvenile Justice (DJJ). (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 306.)

14

(*King*, *supra*, 5 Cal.4th at p. 69.) "Here, the specific reference to first degree murder in [the statute allowing for CYA commitment], by reasonable implication, includes an attempt to commit that crime." (*Id*. at pp. 69–70; see also *People v. Marinelli* (2014) 225 Cal.App.4th 1, 6 [when the literal interpretation of a statute is contrary to the legislative intent, "then we must construe the statute as applying to attempts, despite the fact that it does not explicitly identify them"].)

In *Barrajas*, defendant approached an undercover deputy "and asked him if he had any 'crank.'" (*Barrajas, supra,* 62 Cal.App.4th at p. 928.) Defendant was arrested after he paid the deputy $20 for a bindle designed "to look like methamphetamine." (*Ibid*.) Defendant was found guilty of *attempted possession* of methamphetamine, and sentenced to jail. The trial court had denied defendant's request for pretrial diversion, "on the ground that diversion is not available to one who *attempts* to commit a divertible offense." (*Ibid*.) The Court of Appeal disagreed and reversed: "As remedial legislation, the diversion statutes should be liberally construed to promote their general purpose." (*Id*. at p. 930.) The appellate court stated the purpose of diversion was to provide "educational and counseling programs . . . without the lasting stigma of a criminal conviction." (*Ibid*.) "There is no apparent reason consistent with this purpose to treat persons who *attempted* a divertible offense differently from those who *completed* it." (*Ibid*., italics added.)

The appellate court in *Barrajas* noted other cases holding that the statute requiring the registration of certain drug offenders did, in fact, apply to attempted crimes, even though attempted crimes were not stated in the statute. (*Barrajas*, *supra*, 62 Cal.App.4th at p. 930.) "Were this not the case . . . 'persons convicted of attempting a serious drug offense would not be required to register while those convicted of a completed, but less serious

15

offense, must register.'" (*Ibid*.) "'It would be *patently absurd* to require a person who committed the general intent crime of transporting heroin to register as a narcotics offender while failing to require a person convicted of a crime requiring the formulation of specific intent to transport heroin to register.' [Citation.] By parity of reasoning, it makes little sense to suppose the Legislature intended to exclude from diversion those persons whose efforts to acquire drugs were sincere but unavailing." (*Ibid*., italics added.)

Here, the trial court denied remedial relief to Luu under section 1172.6 because Luu had been convicted of the lesser included offense of attempted manslaughter, rather than the greater offense of attempted murder. Indeed, it is undisputed that had Luu been convicted of a completed manslaughter (or a completed murder) under the natural and probable consequences doctrine, the court would have found him eligible for relief.

We find that under section 1172.6 Luu is statutorily eligible for relief. Although the inchoate crime of attempted manslaughter is not explicitly stated in the statute, the completed crime of manslaughter *is* explicitly stated in the statute. Our finding is consistent with the Supreme Court's analysis in *King,* and the appellate court's analysis in *Barrajas,* which both "by reasonable implication" rationally concluded that the Legislature intended to include attempted crimes, even though attempted crimes were not stated within the respective statutes. (See *King*, *supra*, 5 Cal.4th at pp. 69–70; see also *Barrajas*, *supra*, 62 Cal.App.4th at p. 930.) In this case, we similarly come to the reasonable conclusion that the apparent intent of the Legislature was to offer relief for those convicted of certain designated crimes under now obsolete theories of liability—be they completed crimes or attempted crimes—and the trial court's ruling has manifestly led "'to absurd results.'" (See *People v. McKenzie, supra,* 9 Cal.5th at p. 45.)

16

Indeed, the Legislature's explicit purpose in enacting section 1172.6 was "to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Consistent with the reasoning of other courts in similar circumstances, we find: "There is no apparent reason consistent with this purpose to treat persons who attempted [an eligible] offense differently from those who completed it." (*Barrajas, supra,* 62 Cal.App.4th at p. 930.)

Just as earlier appellate court opinions *mistakenly* found that the Legislature did not intend to include attempted crimes in former section 1170.95, the trial court's interpretation of section 1172.6 in this case "has led to an *absurd and unfair situation* where people are eligible for resentencing if the victim died, but are ineligible if the victim did not die." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 775, *supra,* at p. 3, italics added.)

Thus, we reverse the trial court's order that found Luu ineligible for relief under section 1172.6. On remand, we direct the trial court to reissue the OSC and to conduct an evidentiary hearing. If the People cannot prove that Luu is guilty beyond a reasonable doubt of attempted voluntary manslaughter under a now valid liability theory, the trial court is ordered to resentence Luu consistent with current statutory and decisional authorities.

The Attorney General argues: "The superior court properly denied [Luu's] Penal Code section 1172.6 petition; his conviction for attempted voluntary manslaughter is not eligible for resentencing." However, we respectfully disagree with trial court's analysis.

The trial court found at the time it initially issued an OSC that "the intent of the statute" was "to provide some relief for people who were sentenced to extensive periods of time in state prison because of a natural and probable consequences theory for their conviction." And at the time of its

17

ruling, the court stated "that by denying the petition, Mr. Luu's sentence is disproportionate to sentences imposed on his codefendants, and is, therefore, *inconsistent with the Court's understanding of the legislative intent of the statute.* However, the plain wording of Penal Code 1172.6 is clear." (Italics added.)

In sum, the trial court appeared to properly recognize that the intent of the Legislature in revising section 1172.6 was to include defendants convicted of attempted crimes obtained under the natural and probable consequences doctrine, and the result of its ruling was plainly inconsistent with that legislative intent. Nevertheless, the trial court then erred by denying Luu's section 1172.6 petition, which manifestly led to an admittedly disproportionate (and absurd) result, given that Luu was arguably the least culpable participant in the underlying target crime (attempted robbery).

We find that the trial court's fundamental mistake was that it failed to apply long standing rules of statutory interpretation, which hold that a court "'may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results.'" (See, e.g., *Rodriguez v. Superior Court, supra,* 15 Cal.5th at p. 513; *People v. McKenzie, supra,* 9 Cal.5th at p. 45 ["Such a rule 'would clearly lead to absurd results'"]; *People v. Mendoza* (2000) 23 Cal.4th 896, 908 ["We must . . . avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend"]; *People v. Birkett, supra,* 21 Cal.4th at p. 231 ["We must follow the statute's plain meaning . . . unless doing so would lead to absurd results the Legislature could not have intended"].)

The trial court also stated that it "*presumes that the Legislature's omission of attempted manslaughter was deliberate,* and despite the apparent inequities of this outcome, the Court finds that Mr. Luu is not eligible for

18

relief, and his petition is denied." (Italics added.) In other words, based on the Legislature's *inaction*—its failure to explicitly include attempted manslaughter within section 1172.6—the court felt it was somehow able to presume the intent of the Legislature. We disagree.

As other appellate courts have acknowledged, "legislative inaction is a thin reed from which to divine the intent of the Legislature." (*Tomlinson v. Qualcomm, Inc.* (2002) 97 Cal.App.4th 934, 942; *San Diego County Employees Retirement Assn. v. County of San Diego* (2007) 151 Cal.App.4th 1163, 1184 ["it is well established that legislative inaction alone does not necessarily imply legislative approval, and at most provides only a 'weak inference of acquiescence'"].)

As we have discussed, prior to the passage of SB 775, there were published opinions finding that defendants were ineligible for relief under former section 1170.95 because they were convicted of attempted murder or manslaughter under now defunct legal theories. (See *People v. Sanchez, supra,* 48 Cal.App.5th at p. 916 [the statute "does not apply to defendants convicted of . . . manslaughter"].) However, there appear to have been no published opinions involving convictions for attempted manslaughter under now defunct legal theories. Presumably, that is why the Legislature did not also address that specific inequity when it passed SB 775.

To reiterate and conclude, we find Luu is eligible for relief under section 1172.6 because he was convicted of attempted manslaughter under the now invalid natural and probable consequences doctrine. Our holding is consistent with the Legislature's intent, and a contrary interpretation has led to an unintended, unjust, and manifestly absurd result.

19

## III.

## DISPOSITION

The trial court's order, which found Luu ineligible for relief under section 1172.6, is reversed. On remand, the court is directed to again issue an OSC and to conduct an evidentiary hearing. If Luu qualifies for relief, the court is ordered to resentence him consistent with current laws. [7]

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

GOODING, J.

---

[7] Luu argues he is entitled to a retroactive fitness hearing in the juvenile court at the time of resentencing. (See *People v. Superior Court* (*Lara*), *supra*, 4 Cal.5th at p. 303.) The Attorney General concedes the issue if Luu "prevails on his section 1172.6 petition for resentencing." We agree. (See *People v. Lopez* (2025) 17 Cal.5th 388, 397 [a judgment becomes nonfinal for retroactivity purposes at the resentencing hearing].)